UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:15-CR-096 |
| | ) |
| KATHY DENISE JONES | ) |

# MEMORANDUM AND ORDER

The defendant pled guilty to two counts of the superseding indictment and will be sentenced on August 11, 2016. The United States Probation Office has prepared and disclosed a Presentence Investigation Report ("PSR") [doc. 95], to which the defendant filed three objections. The third of these objections is biographical in nature and has been incorporated into the PSR by an addendum [doc. 125]. The remaining objections will now be overruled.

I.

*Objection One*

The defendant pled guilty to a controlled substance offense (Count Four) and an obstructive offense (Count 19). Paragraphs 27 and 32 of her PSR correctly explain both how a defendant's offense level is calculated in such cases generally *and* how the offense level was calculated in this specific case.

It is undisputed that the present PSR's offense level calculation is correct. Nonetheless, by her first objection, the defendant argues that paragraph 32 of her PSR should be rewritten to say what is already said in paragraph 27 of that same document.

Otherwise, according to the defendant, her Bureau of Prisons ("BOP") security classification may be impacted in some unexplained way. This objection is not well-taken.

Within its discretion, the BOP will determine the instant defendant's security classification. It will do so based on her history, characteristics, and offense conduct, and not on the basis of guideline mechanics correctly recited in paragraphs 27 and 32 of her PSR. The defendant's first objection will be overruled.

II.

*Objection Two*

The defendant also argues that she is entitled to application of the safety valve. *See* 18 U.S.C. § 3553(f); U.S. Sentencing Guidelines Manual §§ 5C1.2, 2D1.1(b)(17) (2015). Certain defendants are eligible for a two-level reduction in their offense level if five criteria are met. *See id.* At issue in this case is the second of these requirements, that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." *See* 18 U.S.C. § 3553(f)(2); U.S. Sentencing Guidelines Manual § 5C1.2(a)(2). The court must consider the defendant's "own conduct and conduct that [she] aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S. Sentencing Guidelines Manual § 5C1.2 cmt. n.4.

Initially, it is again noted that the defendant pled guilty to Count 19 of the superseding indictment, a conspiracy count which charges a violation of 18 U.S.C. § 1513(b)(2). That statute prohibits "knowingly engag[ing] in any conduct and thereby

2

caus[ing] bodily injury to another person or damag[ing] the tangible property of another person, or threaten[ing] to do so, with intent to retaliate against any person for any information relating to the commission or possible commission of a Federal offense . . . given by a person to a law enforcement officer." 18 U.S.C. § 1513(b)(2). Stated differently, the present defendant pled guilty to conspiring to engage in, or threaten to engage in, violent retaliatory conduct related to this case. On the basis of that plea alone, she does not satisfy § 3553(f)(2) and her second objection will be denied.

The defendant's plea agreement further defeats her objection. This case is primarily a controlled substance prosecution and the lead named defendant is Gregory Moore ("Moore"). In a recorded jail call, Moore told his codefendant wife Pamela Moore that that a person referred to herein as "IV" was "the snitch." [Plea Agreement, doc. 74, ¶ 4(b)]. In a subsequent call, Moore instructed his wife (again referring to IV) to have codefendant Donnie Wallen "beat that n*****'s brains out," "beat the brakes off that mother f***er," and "beat the f*** out of that black n*****." *Id.* ¶ 4(c).

Pamela Moore then met with the defendant, Wallen, and codefendant David Davis to "explain[] what Gregory Moore wanted done to the IV [sic] and why." *Id.* ¶ 4(d). "Wallen agreed to take care of the job for Gregory Moore." *Id.* Four days later, in another recorded jail call, Moore asked the defendant to have Wallen collect a drug debt from IV "and if he [IV] don't [pay the debt], beat the brakes off his f***ing ass." *Id.* ¶ 4(f).

Soon thereafter, the defendant again met with Pamela Moore. *Id.* ¶ 4(g). On behalf of her husband, Pamela Moore asked whether Wallen "had taken care of IV yet."

3

*Id.* The defendant responded that Wallen "was not going to take care of" IV unless IV did not repay his drug debt. *Id.* The defendant and Pamela Moore then continued their discussion regarding "beating his [IV's] ass." *Id.*

> The defendant said that Gregory Moore had wanted Wallen to do it "and then Greg came back and said, you know Donnie, that IV owes me $1,000.00 and you need to get the money or break his knee caps." The defendant told Pamela Moore that David Davis had talked to Gregory Moore on jail phones multiple times and that he told her that IV was not the only person who snitched on Gregory Moore. The defendant said that Donnie did not want to "beat the hell out of somebody if it ain't them that gave him up, so he don't know what to do." The defendant told Pam, "if this is not the man or if there is any doubt that this is not the man you needed . . . because Donnie prepared to go ahead and beat the hell out of the guy, you know leave him for dead, and if its [sic] not him that set you up, we need to know." Pamela Moore said, "But that's what Greg told me. . . . he wasn't hesitant about it." The defendant said, "He will take care of it if we know for sure that's the person that did it. I mean . . . if there's any doubt, I wouldn't want to beat the hell out of somebody and it not be the right one."

*Id.* When arrested six weeks later, the defendant "admitted that Gregory Moore told her that IV was the one that set him up and that she relayed this information to co-defendant David Davis. The defendant further admitted that she also told co-defendant Wallen that IV was the one that set up or snitched on Gregory Moore." *Id.* ¶ 4(i).

Faced with these admitted facts, the defendant nonetheless now deems herself a peacemaker who "had little to do with any kind of threat of violence to anyone." The court disagrees, although it does appear that the defendant and Wallen acted with at least some measure of restraint as compared to Gregory Moore. Even so, the defendant admittedly relayed to two of her codefendant's Moore's conclusion that IV was "the snitch." She was aware, after meeting with Pamela Moore, that Gregory Moore wanted

IV's "brains beat out" for being "a snitch."  She was also aware that Gregory Moore wanted IV's "brakes beaten off" if a drug debt was not repaid.  The defendant clearly stayed in communication with Wallen because she was aware that he intended to "take care of" IV (*i.e.*, "beat the hell out of him and leave him for dead") if the debt went unpaid or if the group confirmed that IV was "the snitch."  That decision ultimately would not be made by Wallen alone, as evidenced by the defendant's statement that "we" need to know whether IV is "the snitch" before Wallen "beats the hell out of him and leaves him for dead."  One does not use the word "we" unless one is part of that "we."

The defendant has pled guilty to conspiring to cause (or at least threaten to cause) bodily injury to IV in retaliation for "snitching" on this drug distribution conspiracy.  The factual basis of her plea agreement further shows that, at a minimum, she aided, abetted, and counseled a threat of violence against IV in connection with this case.  The court finds that threat to have been credible because Gregory Moore's codefendants obviously considered it credible themselves.  As such, the defendant cannot benefit from the safety valve.  *See* 18 U.S.C. § 3553(f)(2); U.S. Sentencing Guidelines Manual § 5C1.2(a)(2).

5

## III.

*Conclusion*

For the reasons provided herein, the defendant's first and second objections to her PSR are **OVERRULED** and her third objection is **OVERRULED AS MOOT**. Sentencing remains set for August 11, 2016, at 10:15 a.m. in Greeneville.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

6

Case 2:15-cr-00096-RLJ-MCLC   Document 139   Filed 08/01/16   Page 6 of 6   PageID #: 590